UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| YAHNI PEDIGREE, *on behalf of herself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>HUMANS, INC. D/B/A FLIP,<br><br>Defendant. | Civil Action No.:<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Yahni Pedigree ("Plaintiff") brings this class action against Humans, Inc. d/b/a Flip ("Flip" or "Defendant"), and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA").

2. To promote its goods and services, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations. Defendant also engages in telemarketing without the

1

required policies and procedures, and training of its personnel engaged in telemarketing.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and the Class members. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

5. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District.

## PARTIES

6. Plaintiff is a natural person entitled to bring this action under the TCPA, and a citizen and resident of Georgia.

7. Defendant is a corporation. Defendant directs, markets, and provides its business activities throughout the state of Georgia.

8. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Plaintiff's cellular telephone number is (470) 830-XXXX.

11. On November 24, 2024, at 5:42 p.m., Plaintiff received the following text from Defendant:

> 93 people in your community joined Flip today. Refer friends now while invite rewards are up 48%. https://flip.shop/invite-coupons Stop2Quit

12. This text came from short code 29209.

13. Shortly after Plaintiff received Defendant's text message solicitation, Plaintiff replied with the instruction to "Stop" as advised in Defendant's message.

14. In response, Defendant sent the following text message confirming it had received Plaintiff's stop instruction and stating that Plaintiff would not receive any further texts from Defendant:

> You are unsubscribed from FLIP. No more messages will be sent. Help at wecare@flip.shop

15. Despite confirming Plaintiff's stop request and stating that Plaintiff would not receive any further text messages, Plaintiff received the following text message solicitation on April 20, 2025 at 10:03 p.m.

> Flip: You have unused rewards! Redeem now: https://l.flip.shop/rMs97
>
> --
>
> New tariffs could raise prices starting May2.
>
> Stop2Quit

16. On May 5, 2025, at 3:03 p.m., Plaintiff received yet another harassing text message solicitation from Defendant.

17. This message reads as follows:

> Flip: Want $35?
>
> Share Flip with friends to claim! Tap to invite
>
> https://l.flip.shop/a/J6xYi

18. Plaintiff was annoyed and harassed by the repeated solicitation text messages from Defendant and Defendant's noncompliance with her stop request.

19. As demonstrated by the above message, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

20. As demonstrated by the above message, Defendant does not honor consumer requests to opt-out of text message solicitations.

21. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

22. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

23. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

24. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

25. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made opt-out requests and that those requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages.

26. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and Class members. Defendant also has access to text message logs showing Plaintiff's and Class members' inbound opt-out requests.

27. Plaintiff and Class members revoked any consent they may have previously provided to Defendant by replying with a "Stop" or similar opt-out instruction in response to Defendant's text messages.

28. Defendant's text messages caused Plaintiff and Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

29. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

30. Plaintiff brings this case on behalf of the Class defined as follows:

> IDNC Class: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding Defendant's goods or services, to said person's residential cellular telephone

number, *after* communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.

31. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

32. Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

33. Plaintiff does not know the exact number of members of the Class but is informed and believes that there are at least 50 individuals that fall within the class definitions given Defendant's use of robotexts to solicit consumers and refusal to honor stop requests. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

34. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

35. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

    a. Whether Defendant sent text messages to Plaintiff and the Class members;

    b. Whether Defendant continued to send text message solicitations after opt-out requests;

    c. Whether Defendant failed to honor Plaintiff's and the Class members' opt-out requests;

    d. Whether Defendant implemented the requisite training of personnel under section 64.1200;

    e. Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;

    f. Whether Defendant maintains the required policies and procedures under section 64.1200; and

    g. Whether Defendant is liable for damages, and the amount of such damages.

36. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

37. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

38.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

40.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual

actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the IDNC Class)

41. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 40 as if fully set forth herein.

42. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or

entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

43. Under 47 C.F.R. § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

44. Plaintiff and the Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

45. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

46. Plaintiff and the Class Members revoked any consent they may have previously provided Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

47. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages. *See* 47 C.F.R. § 64.1200(f)(5)(i). (A consumer's "seller-specific do-not-call request * * * terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.")

48. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

49. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

50. Defendant failed to honor Plaintiff's and the Class members' opt-out requests.

51. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

52. Plaintiff and the Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

53. Plaintiff and the Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

54. Plaintiff and the Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

55. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

56. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

57. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

58. As a result of Defendant's knowing or willful conduct, Plaintiff and the Class members are entitled to an award of $1,500.00 in statutory damages per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

a) An award of statutory damages for Plaintiff and each member of the Class as applicable under the TCPA;

b) An order declaring that Defendant's actions, as set out above, violate the TCPA;

c) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

d) Such further and other relief as the Court deems necessary.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Date: June 3, 2025

<u>*/s/ Steven H. Koval*</u>
Steven H. Koval
Georgia Bar No. 428905
The Koval Firm, LLC
3575 Piedmont Rd NE
15 Piedmont Center Suite 120
Atlanta, GA 30305
(404) 513-6651
Steve@KovalFirm.com

*Counsel for Plaintiff and the proposed class*

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Local R. 7.1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in LR 5.1(B). The foregoing was prepared on a computer, using Times New Roman 14 point font.

This 3rd day of June, 2025.

**THE KOVAL FIRM, LLC**

s/ Steven H. Koval
By: Steven H. Koval
Georgia Bar No. 428905

*Counsel for Plaintiff and the proposed class*